IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL RAY FULLER,

    Petitioner,

v.                                                     Civil No. 3:23cv256

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Michael Ray Fuller, a former Virginia state prisoner, proceeding with counsel, brings this petition pursuant to 28 U.S.C. § 2254 (the "§ 2254 Petition") challenging his convictions in the Circuit Court for Caroline County, Virginia ("Circuit Court").[1] (ECF No. 1.) Respondent moves to dismiss on the grounds that Mr. Fuller's claim lacks merit. Fuller has not responded. As explained below, the Motion to Dismiss, (ECF No. 6), will be GRANTED, and the § 2254 Petition, (ECF No. 1), will be DENIED.

### I. Procedural History

On November 3, 2016, a jury convicted Fuller of "Maliciously Shooting at an Occupied Motor Vehicle." (ECF No. 8-1, at 1; *see* ECF No. 1 ¶ 4.) The Circuit Court imposed a sentence of two years in accord with the verdict of the jury, but suspended one year, for an active sentence of one year of incarceration. (ECF No. 1 ¶ 5.) Mr. Fuller appealed, challenging the sufficiency of the evidence and arguing that he had acted in self-defense. (ECF No. 8-2, at 4.) The Court of

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spacing, capitalization, punctuation, spelling in, and removes emphasis from, the quotations from the parties' submissions.

Appeals of Virginia denied the petition for appeal. (ECF No. 8-2, at 2.) A three-judge panel also denied the petition for appeal. (ECF No. 8-2, at 1.) The Supreme Court of Virginia subsequently refused the petition for appeal. (ECF No. 8-3, at 1.)

Fuller, by counsel, filed a petition for writ of habeas corpus in the Circuit Court raising the following claim:

> Claim A: "Counsel failed to assign error on appeal and argue that the trial court's refusal to instruct the jury on heat of passion was reversible error." (ECF No. 8-4, at 12.)

On February 17, 2022, the Circuit Court denied Fuller's habeas petition. (ECF No. 8-4, at 3.) On October 27, 2022, the Supreme Court of Virginia determined that there was no reversible error in the Circuit Court's judgment and refused the petition for appeal. (ECF No. 8-5, at 1.)

On April 14, 2023, Fuller filed the present § 2254 Petition. Fuller raises the identical claim for relief from his state habeas petition as follows:

> Claim One: "Counsel failed to assign error on appeal and argue that the trial court's refusal to instruct the jury on heat of passion was reversible error." (ECF No. 1 ¶ 31.)

## II. Applicable Constraints on Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

2

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given this standard, the decisions of the Virginia courts with respect to Fuller's claim figures prominently in this Court's opinion.

### III. Analysis

#### A.   Applicable Law for Ineffective Assistance of Counsel Claims

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

3

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

The Court now turns to whether "the ignored issue" of the Circuit Court's refusal to give a heat of passion instruction was clearly stronger than the issues raised by appellate counsel. As discussed below, it was not.

### B. Counsel's Arguments on Appeal and Summary of Evidence

On appeal, counsel for Mr. Fuller raised two Assignments of Error:

> The trial court erred in denying Fuller's motion to strike the evidence of maliciously shooting into an occupied vehicle and convicting him of the same because the Commonwealth failed to prove the Defendant acted with malice[.]

> The trial court erred in denying [ ] Fuller's motion to strike the evidence of maliciously shooting into an occupied vehicle and convicting Fuller of the same because the Defendant was acting in self-defense.

4

(ECF No. 8-2, at 10.) The Court of Appeals summarized the evidence presented at trial, and rejected Mr. Fuller's Assignments of Error as follows:

> On June 19, 2015, Patricia Seaver visited the Caroline County home her sister, Nancy Halstead, shared with appellant. Seaver had known appellant for more than thirty years. Halstead and appellant gave Seaver a pistol as a gift. Appellant spent some time with Seaver teaching her how to use the pistol. Later, Seaver drove appellant and Halstead to a location in Ashland to pick up a moped. Halstead then rode the moped to a Denny's restaurant in Caroline County. Appellant traveled with Seaver in the car to the restaurant to have lunch.
>
> Before Halstead arrived, appellant told stories and behaved in a manner that was insulting to Seaver. After Halstead reached the restaurant and food was served, Halstead and Seaver were talking to each other. Appellant became angry and confrontational, and yelled at them from across the table. Seaver got up and left. After waiting for a period of time in her car, Seaver drove to Halstead's and appellant's home and left some items of their property on the porch. She also left behind the pistol appellant had given her.
>
> After talking to Halstead by telephone, Seaver returned to the restaurant and agreed to drive appellant home. Along the way, appellant became upset about Seaver's driving. He was thrashing about and distracting her. Appellant then directed Seaver to turn down a narrower road. Seaver did so, but was scared because she thought appellant was "up to something." She stopped the car to turn around and head back to the main road. Appellant demanded that Seaver let him out of the car. Seaver said she would drive appellant home. She continued driving. Appellant ordered her to stop the car by the count of three or he would fire his gun. Appellant then fired his gun, and a bullet struck the dashboard of the car. Appellant got out of the car and told Seaver that she had "kidnapped" him. Seaver drove away. She stopped at a nearby fire station and reported the incident.
>
> Halstead testified that during the meal at Denny's, Seaver made disparaging remarks about several members of their family. Regarding Halstead's and Seaver's elderly father, appellant said that Seaver should do whatever her father wants. Seaver got angry and stormed out of the restaurant.
>
> Testifying in his own behalf, appellant said Seaver was driving in a dangerous manner when they were traveling to retrieve the moped. After appellant complained, Seaver stopped driving erratically. At the restaurant, Seaver was confrontational in her discussion with Halstead. Appellant denied yelling at Seaver. He claimed she suddenly shrieked and entered a "fugue" state. Seaver pushed Halstead out of the booth and left.
>
> According to appellant, when Seaver returned to the restaurant later, she asked him several times, in a friendly tone of voice, to get in her car. He agreed. As they traveled, appellant changed his mind and wanted to return to Denny's. He

5

grabbed the steering wheel to turn the vehicle to the right down a narrow road. Appellant said Seaver's eyes had "turned black." He feared she was in a "fugue state" or had been drugged. Appellant demanded that Seaver let him out of the car. When Seaver pulled into a driveway, appellant opened the door to get out. Seaver started backing up quickly. Appellant reached over to grab the key in the ignition. Appellant said he was scared and "automatically" pulled out his gun. He fired the gun into the dashboard of the car. Afterward, appellant exited the car while it was still moving.

Appellant contends the evidence was insufficient to prove that he acted with malice when he fired the gun. He also claims he acted in self-defense.[]

"Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Canipe v. Commonwealth*, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1977).

> Malice inheres in the intentional doing of a wrongful act without legal justification or excuse. Malice is not confined to ill will, but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief.

*Williams v. Commonwealth*, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Smith v. Commonwealth*, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993). "The trier of fact determines the weight of the evidence in support of a claim of self-defense." *Gardner v. Commonwealth*, 3 Va. App. 418, 426, 350 S.E.2d 229, 233 (1986). "[A] person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421, 382 S.E.2d 24, 35-26 (1989). Regardless of who is at fault for precipitating the confrontation, the "amount of force used [by the defendant in his defense] must be reasonable in relation to the harm threatened." *Id.* at 421, 382 S.E.2d at 26.

In finding appellant guilty, the jury rejected appellant's evidence. "[D]etermining the credibility of the witnesses and the weight afforded the testimony of witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015).

The Commonwealth's evidence proved appellant fired the gun inside the vehicle with malice and that his action was not in self-defense. Appellant, who had confronted Seaver in an angry fashion earlier, fired a gun in the enclosed space of a moving automobile. This action placed Seaver in danger of being injured or killed by the gunshot. Moreover, the firing of the gun was not reasonable under the circumstances, even if appellant did believe himself somehow threatened by

6

> Seaver's driving. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of maliciously firing a gun in an occupied motor vehicle.

(ECF No. 8-2, at 2–5 (first alteration added)).

### C. Mr. Fuller's Claim Here is Not Stronger Than Issues Raised on Appeal

#### 1. The Basis for Mr. Fuller's Claim

In Claim One, Mr. Fuller faults appellate counsel for failing "to assign error on appeal and argue that the trial court's refusal to instruct the jury on heat of passion was reversible error." (ECF No. 1 ¶ 31.) Mr. Fuller contends that "[t]he trial court incorrectly ruled that heat of passion only applies to charges of murder and manslaughter" and that, "[i]t should be quite clear that heat of passion can apply when malice if an element of the offense, such as with a charge of maliciously shooting at an occupied vehicle." (ECF No. 1 ¶ 49.) Indeed, it appears that the Circuit Court refused the instruction because it believed heat of passion did not apply to this type of crime. After the close of the evidence, the Circuit Court considered two instructions on malice:

> THE COURT: ... Are there any other instructions that I need to consider?
>
> MR. HEIDT: There are, Judge. There's a short and long malice. I think the Court will probably grant the long malice.
>
> THE COURT: You should never try to guess at what I'm going to do. All right. So, I have two instructions dealing with malice. Are they both from the models?
>
> MR. HEIDT: They are.
>
> MR. REYES: Yes, Your Honor.
>
> MR. HEIDT: One's short and one is long.
>
> THE COURT: So, they both define malice, but then one goes into the definition of heat of passion and, of course, heat of passion is the designation between murder and man-slaughter, essentially, but has no application to this case, does it? Heat of passion?

7

> MR. REYES: Well, Your Honor, I would argue it does. I think heat of passion can negate malice in any type of case.
>
> It can make malicious wounding an unlawful wounding if there's heat of passion because then there's no malice.
>
> And, in this situation, I think from Mr. Fuller's testimony, at the very least he was acting in a heat of passion. He said this happened very quickly. He pulled the gun out instinctively. He was scared for his life. If that's not a heat of passion, I don't know what is.
>
> THE COURT: All right. And so, Mr. Heidt, what's the Commonwealth's position on these instructions?
>
> MR. HEIDT: Well, Judge, I tend to agree with the Court's initial reaction that it's not a heat of passion case and that the defendant would have to prove something that he did.
>
> It's his mindset at the time, and I think the short one -- there's not been evidence or testimony of heat of passion thus far that is credible. So, I'd ask the Court to use the short one.
>
> THE COURT: Mr. Reyes, I'm not sure that I agree that heat of passion can exist in any kind of case. I mean, there's a specific statutory definition that deals with heat of passion and what that does to the elements of a specific offense.
>
> In terms of an offense such as this, there are affirmative defenses. There is a lack of malice. There is, I suppose, in a way self-defense. There is – there are a number of affirmative defenses.
>
> But, I don't think heat of passion is one of them, and so I'm going to grant the instruction that does not include heat of passion.

(Trial Tr. 305:12–308:8.)[2] Over the objection of the Commonwealth, the Circuit Court also agreed to give a self-defense instruction. (Trial Tr. 309:4–311:6.)

### 2. The State Habeas Court Found This Claim Lacked Merit

In his state habeas, Mr. Fuller argued that appellate counsel was ineffective when counsel "failed to assign error on appeal and argue that the trial court's refusal to instruct the jury on heat

---

[2] Mr. Fuller's State Trial in Case Nos. CR16-81, CR16-117, and CR16-381 was held in the Circuit Court of the County of Caroline on November 3, 2016.

of passion was reversible error." (ECF No. 8-4, at 2.) In determining that this lacked merit, the Circuit Court ("State Habeas Court") found as follows:[3]

> 1. Fuller has satisfied neither the "performance" nor the "prejudice" prong of *Strickland*.
>
> 2. There was less than a scintilla of evidence presented at trial that Fuller acted in the heat of passion.
>
> 3. Any argument on appeal that the trial court erred in refusing that instruction would have been unsuccessful.
>
> 4. Appellate counsel was not ineffective for failing to present this heat of passion argument on appeal.
>
> 5. Fuller has failed to meet his burden of demonstrating that the heat of passion issue was "clearly stronger than those presented" by appellate counsel on appeal.
>
> 6. Fuller has failed to rebut the presumption that counsel's representation of Fuller on appeal was constitutionally reasonable and has failed to show prejudice under *Strickland*.

(ECF No. 8-4, at 2.) As explained below, the Court discerns no unreasonable application of the law or an unreasonable determination of the facts in the State Habeas Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2).

### 3. The Resolution of This Claim Is Highly Dependent on Virginia Law

#### a. Standard for Review of Jury Instructions on Appeal

Under Virginia law, "[a]s a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Woods v. Commonwealth*, 782 S.E.2d 613, 617 (Va. Ct. App. 2016) (quoting *Cooper v. Commonwealth*, 673 S.E.2d 185, 187 (Va. 2009)). The Court of Appeals of Virginia "review[s] the trial court's 'broad discretion in giving or

---

[3] Because the Supreme Court of Virginia summarily refused Fuller's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Circuit Court. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

denying instructions requested' for an abuse of discretion." *Williams v. Commonwealth*, 767 S.E.2d 252, 255 (Va. Ct. App. 2015) (quoting *Gaines v. Commonwealth*, 574 S.E.2d 775, 778 (Va. Ct. App. 2003)). On appeal, the Court of Appeals of Virginia's responsibility "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (quoting *Rhodes v. Commonwealth*, 583 S.E.2d 773, 775 (Va. Ct. App. 2003)). While a defendant "'is entitled to an instruction upon his theory of the case,' this rule can be invoked "[o]nly when such instruction is supported by *some appreciable evidence*." *Id.* (alterations in original) (some quotation marks omitted) (citations omitted). Virginia jurisprudence also requires that "[n]o instruction should be given . . . 'which would be confusing or misleading to the jury.'" *Graves v. Commonwealth*, 780 S.E.2d 904, 906 (Va. Ct. App. 2016) (alteration and omission in original) (quoting *Mouberry v. Commonwealth*, 575 S.E.2d 567, 569 (Va. Ct. App. 2003)). Additionally, under Virginia law, "a jury instruction may be given only if it is supported by more than a mere scintilla of evidence." *Lawlor v. Commonwealth*, 738 S.E.2d 847, 874 (Va. 2013); *see Williams*, 767 S.E.2d at 255. "Thus, it is not error to refuse an instruction when there is no evidence to support it." *See Williams*, 767 S.E.2d at 256 (citation omitted). The Court of Appeals of Virginia "reviews the record to determine whether there was more than a scintilla of credible evidence in support of the proponent's jury instruction." *Woods*, 782 S.E.2d at 617.

### b. Law For Heat of Passion Defense in Virginia

"Virginia has long recognized that malice and heat of passion cannot coexist. Proof of malice excludes the presence of passion, and proof of passion presupposes the absence of malice." *Hodge v. Commonwealth*, 228 S.E.2d 692, 697 (Va. 1976) (citing *Brown v. Commonwealth*, 10 S.E. 745, 747–48 (Va. 1890)). "'Heat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason." *Dandridge v. Commonwealth*, 852 S.E.2d

10

488, 493 (Va. Ct. App. 2021) (quoting *Woods v. Commonwealth*, 782 S.E.2d 613, 617 (Va. 2016)). It "excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection." *Id.* (quoting *Witherow v. Commonwealth*, 583 S.E.2d 223 (Va. Ct. App. 2015)). "Heat of passion . . . may be founded upon rage, fear or a combination of both." *Rhodes v. Commonwealth*, 583 S.E.2d 773, 776 (Va. Ct. App. 2003) (citation omitted).

"When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). As discussed below, Mr. Fuller's claim lacks merit because, as the State Habeas Court reasonably concluded, appellate counsel was neither deficient nor was Mr. Fuller prejudiced.

### 4. Appellate Counsel Was Not Deficient and Mr. Fuller Was Not Prejudiced

Mr. Fuller contends that the Circuit Court refused to give the instruction for heat of passion based on a mistaken belief that a heat of passion defense only applied to distinguish murder from manslaughter, "which is a patently erroneous ruling."[4] (ECF No. 1, at 8.) Nevertheless, despite the seeming impropriety of the Circuit Court's reasoning behind the refusal to give a jury instruction that included heat of passion and malice, the State Habeas Court reviewed this precise claim and determined, there was no reversible error. (*See* ECF No. 8-4, at

---

[4] It is unclear why the Circuit Court would believe that heat of passion was not a defense to the crime of maliciously shooting into an occupied vehicle, as it would negate malice. While a ruling on that basis may be wrong under Virginia law, claims resting upon an interpretation of state law provide no basis for federal habeas relief. *Wright v. Angelone*, 1515 F.3d 151, 157 (4th Cir. 1998). This is because "[i]t is beyond the mandate of federal habeas courts . . . to correct the interpretation by state court's of a state's own laws." *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (citation omitted).

11

2.) As previously explained, under Virginia law, "a jury instruction may be given only if it is supported by more than a mere scintilla of evidence." *Lawlor*, 738 S.E.2d at 874.[5] As shown below, the record was devoid of evidence supporting the defense of heat of passion because it showed that Fuller acted *with* conscious reflection, and not on impulse.

### a. Testimony About Mr. Fuller Firing the Gun

During trial, Patricia Seaver and Mr. Fuller both testified that they had known each other for a long time because Fuller had been in a relationship with Ms. Seaver's sister, Nancy Halstead, for over thirty years. (Trial Tr. 74:8–17, 235:6–10.) Although there was differing testimony about who was rude and aggressive, who was angry, and who was acting strangely, the record shows that the conflict between Ms. Seaver and Mr. Fuller began earlier while Ms. Seaver, Mr. Fuller, and Ms. Halstead were at Denny's. (*See* Trial Tr. 83:1–84:3, 125:1–129:1, 201:1–205:4, 227:19–228:6, 241:6–245:6.) Both Ms. Seaver and Mr. Fuller testified that things had cooled off between them when Ms. Seaver insisted on driving Mr. Fuller home. (Trial Tr. 86:8–19, 137:9–21, 247:6–248:2.)

From the trial testimony, it was also unclear whether Ms. Seaver's driving was erratic or dangerous. Ms. Halstead and Mr. Fuller both testified that Ms. Seaver was tailgating cars on Interstate 95 on the way to Denny's and that Mr. Fuller asked her to stop tailgating because it was dangerous. (Trial Tr. 227:6–18, 238:16–239:19.) Ms. Seaver testified that while she was driving Mr. Fuller home, she was driving normally, but that Mr. Fuller irrationally began to criticize her driving. (Trial Tr. 87:2–89:5, 138:10–16.) Ms. Seaver told Mr. Fuller to calm

---

[5] The state courts have "avoided establishing a precise definition for the term 'scintilla' because to do so would be 'neither practical nor helpful. Rather, the weight of credible evidence that will amount to a mere scintilla of evidence is a matter to be resolved on a case-by-case basis," *Williams*, 767 S.E.2d at 256 (citations omitted), "by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." *King. v. Commonwealth*, 770 S.E.2d 214, 218 (Va. Ct. App. 2015) (citation omitted).

down, and then Mr. Fuller started yelling at her that she was crazy, and how she will "never make anything out of [her] life," and other "really demeaning statements." (Trial Tr. 89:11–13.) Mr. Fuller testified that Ms. Seaver began to drive sixty miles per hour on a two-lane road with a speed limit of fifty-five, "going faster than [he] like[s] to drive" on that road, and he asked her once to slow down. (Trial Tr. 248:9–249:14.) Mr. Fuller testified that the road had no traffic, but he wanted to get out of the car. (Trial Tr. 250:2–20.) Mr. Fuller got quiet and told her to turn on a road that was not near his home which worried Ms. Seaver. (Trial Tr. 91:8–92:8.) Mr. Fuller said he was going back to Denny's. (Trial Tr. 143:11–12.) Mr. Fuller then decided to ask Ms. Seaver to take "a shortcut, turn right, and [he] grabbed the wheel and jerked it, and when [she] did, she slammed the brakes and the car started turning right." (Trial Tr. 250:11–14.) At the time Mr. Fuller grabbed the wheel, the car was travelling at sixty miles per hour. (Trial Tr. 276:2–14.) Mr. Fuller testified that he wanted to get out of the car because Ms. Seaver's "eyes turned black," and he "[knew] that the person is in a fugue state or they've been drugged," and he feared Seaver because she was screaming at him. (Trial Tr. 251:4–252:8.)[6] Mr. Fuller testified that he was scared that Ms. Seaver "would drive into the tree with me" because he "had clients that have done that." (Trial Tr. 251:15–16.) Mr. Fuller asked to get out of the car, and Ms. Seaver turned into a driveway. (Trial Tr. 252:10–253:14.) Mr. Fuller opened the door and, according to Mr. Fuller, Ms. Seaver said she would not let him out, and Mr. Fuller shut the door and Ms. Seaver continued to back up "gaining speed." (Trial Tr. 92:17–93:16, 253:2.)

---

[6] Mr. Fuller testified about his experience with "clients," and his "research," and what appeared to be wild theories about why he believed Ms. Seaver was acting in a fugue state or as if she was possessed, drugged, or schizophrenic. (Trial Tr. 262:3–271:3.) Mr. Fuller also testified that the gun he had given Ms. Seaver was on the dashboard, which was clearly contrary to both Ms. Seaver and Ms. Halstead's testimony that Ms. Seaver had already left the gun at Mr. Fuller's house. (Trial Tr. 276:21–278:12.)

13

According to Ms. Seaver, Mr. Fuller closed the door and Ms. Seaver began to drive again. (Trial Tr. 144:5–9.)

Ms. Seaver's and Mr. Fuller's testimony about Mr. Fuller shooting the gun into the dashboard of the car, however, was consistent and demonstrated that Mr. Fuller made a conscious decision to fire the gun as a means to escape the car. Mr. Fuller testified: "So, without realizing it, I had that pistol in my hand. It came out automatically. I don't think much about it while she's backing up, and she started, and I said if you don't let me out of this car, I'm going to shoot a hole in [the] dash." (Trial Tr. 253:10–14.) Mr. Fuller then testified:

> Well, I held the pistol and I looked into her face. I wanted to see what to see what her reaction was. That's a .45. That is a heavy weapon and having a lot of experience with that thing and making the ammunition for it, when that thing's fired outside a car, you notice it.
>
> I'm watching to see what her reaction is, and when I fired into that dash, there was no reaction. None. That's when I reached over and grabbed the key.

(Trial Tr. 254:4–13.) Mr. Fuller also explained that the only "choice that [he] had in that small car was the back of [his] hand or the throat," that "[t]he last man [he] hit in the face crushed his face," and that Ms. Seaver was a small woman, so he "attacked her weapon [the car], not her" because he "had no desire to injure her." (Trial Tr. 256:9–16, 280:11–15.) On cross-examination, Mr. Fuller testified that he "just told her at the count of three if she didn't stop that car that I would shoot a hole in her dash." (Trial Tr. 281:16–18.) Mr. Fuller testified that he "reached over and grabbed the key," and as the car slowed, he jumped out. (Trial Tr. 253:3, 257:2–6.) Mr. Fuller walked around to the driver's side and told Ms. Seaver to "calm down[, y]ou've just committed a felony." (Trial Tr. 258:20–21.)

Ms. Seaver testified that Mr. Fuller was not scared, but was mad, and that she did not want to leave him because he "had vertigo that day" and "told her he could hardly walk." (Trial Tr. 145:15–146:16.) Ms. Seaver explained that "things started going south," meaning, "[Mr.

14

Fuller] started saying you let me out of this car, and I was like what? Let me get you home. We're almost there. Let me drive you home and then he said, if you don't stop this car, I'm going to shoot on the count of three. Three, two, one, bang." (Trial Tr. 94:14–18.) Mr. Fuller fired the gun into the dashboard and the bullet went through the glove compartment and Ms. Seaver was unsure if the car would work. (Trial Tr. 96:9–10, 100:17–102:8.) Once Mr. Fuller fired the gun, Ms. Seaver stopped the car and Mr. Fuller got out and "said [Seaver had] kidnapped him." (Trial Tr. 95:19–96:5.) Ms. Seaver explained that from the time Mr. Fuller first asked her to stop until the shot was fired was approximately one minute. (Trial Tr. 152:16–153:7.)

### b. The Evidence Did Not Support a Heat of Passion Instruction

The record shows that Mr. Fuller clearly thought about his actions before firing his gun into the dashboard. Although Mr. Fuller initially testified that he pulled the gun out without thinking, his later testimony shows that he reflected on ways to escape the car or to get Ms. Seaver to stop the car. Mr. Fuller testified that he decided to fire the gun at the dashboard to attack Ms. Seaver's weapon (the car he believed she was driving too fast), instead of physically hitting her to stop the car. The uncontroverted evidence also demonstrates that Mr. Fuller verbally warned Ms. Seaver that if she did not stop the car, he would shoot in three, and then he counted down to three and fired the weapon. Therefore, the evidence did not suggest that "provocation reasonably produced fear that cause[d Fuller] to act on impulse without conscious reflection." *Dandridge*, 852 S.E.2d at 493 (citation omitted). Rather, Mr. Fuller thought before acting. "An act reflecting deliberation is inconsistent with an act performed in the heat of passion." *Hood v. Commonwealth*, No. 2419–02–2, 2004 WL 136411, at *3–4 (Va. Ct. App. Jan. 28, 2004) (finding trial court did not err in refusing to give heat of passion instruction where defendant "fired the 'warning shot' in a deliberate attempt to 'buy enough time to get away,'"

15

which revealed "that, at the time of the shooting, he was acting in a deliberate, thoughtful manner, designing a plan of escape"); *Williams v. Commonwealth*, 767 S.E.2d 252, 253 (Va. Ct. App. 2015) (citations omitted) (holding that defendant's testimony that he deliberately aimed gun with purpose of scaring victim reflected that his act of shooting was done "with a sedate, deliberate mind, and formed design," rather than "on impulse without conscious reflection"); *Williams v. Commonwealth*, No. 0552–02–1, 2003 WL 1810494, at *3 (Va. Ct. App. Jan. 3, 2003) (shooting into the air "to make them put the gun back down," and then shooting two more times "evinces reflection and deliberate, purposeful action, not one borne out of the heat of passion.").

Mr. Fuller argues that "there was ample evidence supporting heat of passion" including that he thought Ms. Seaver was "'in a fugue state' or had 'been drugged,'" that Mr. Fuller was scared and thought she might hit a tree, that Mr. Fuller had asked Ms. Seaver several times to get out of the car, and Mr. Fuller "was so concerned about getting out of the car that, 'without realizing it,' he had his pistol in his hand." (ECF No. 1, at 17–18.) However, at that point, Mr. Fuller's own testimony shows that he did not act in the heat of passion when he fired the gun. While Mr. Fuller may have been fearful when he fired the gun, that does not necessarily mean that he acted on "impulse without conscious reflection." *Dandridge*, 852 S.E.2d at 493 (citation omitted). Mr. Fuller explained that he did not want to physically strike Ms. Seaver so he decided to fire the gun at the car as a means to stop the car. This was clearly an act reflecting deliberation. Mr. Fuller also fired after providing a warning and a countdown to Ms. Seaver further establishing that he thought about his action before taking it.[7] These actions are

---

[7] Mr. Fuller cites to *Lee v. Clarke*, 781 F.3d 114, 116 (4th Cir. 2015) where the United States Court of Appeals for the Fourth Circuit reversed this Court on whether trial counsel provided ineffective assistance by failing to request a jury instruction "defining" heat of passion. *Lee* is too factually distinct from this case to provide persuasive support for Mr. Fuller's claim.

16

inconsistent with a heat of passion defense. In sum, the evidence at trial did not support a heat of passion instruction and as the State Habeas Court reasonably determined, any argument that the Circuit Court erred in refusing to give one would have been unsuccessful on appeal. *See Williams*, 767 S.E.2d at 254 (citations omitted) (explaining that a defendant is only "entitled to an instruction upon his theory of the case" only "when such instruction is supported by *some appreciable evidence*.").

### c. Appellate Counsel Satisfied *Strickland*'s Deferential Standard

Under these circumstances, and based on the law in Virginia, it was reasonable for appellate counsel not to raise the issue that the Circuit Court abused its discretion in refusing to give the heat of passion instruction. As the State Habeas Court reasonably found, the evidence

---

First, trial counsel here specifically requested a heat of passion instruction, and the Circuit Court refused to give that instruction. Thus, the standard for appellate counsel became whether the Court of Appeals would find this to be an abuse of discretion by the trial court because the record contained more than a scintilla of evidence of heat of passion. As explained before, the record at trial contained Mr. Fuller's own testimony that showed his conscious reflection about his actions before he fired his gun and that he provided a three second warning before shooting. Instead, appellate counsel raised different arguments on appeal including whether Mr. Fuller acted with malice or in self-defense, claims that were imminently reasonable to choose based on Mr. Fuller's testimony that he was fearful.

In contrast to Mr. Fuller's case, *Lee* involved two men who were involved in a physical altercation without any sort of conscious reflection or warnings provided. In *Lee*, the trial court gave a jury instruction that included the defense of heat of passion, thus, the trial court clearly believed that the evidence contained more than a scintilla of evidence of heat of passion to allow the jury to hear a reference to that defense. 781 F.3d at 119. However, neither the Commonwealth nor Lee's counsel "requested the full model instruction, which include[d] a definition of heat of passion," which was a key definition for the lesser offense of voluntary manslaughter. *Id.* The Fourth Circuit explained that, because there was "ample evidence of heat of passion," it was error not to instruct the jury "with a complete definition of heat of passion." *Id.* at 123. Thus, the issue in *Lee* was not whether the evidence supported a heat of passion defense, but rather whether trial counsel was deficient, and Lee was prejudiced, because the instructions provided lacked a key definition and were therefore incomplete.

17

did not support an instruction that Mr. Fuller acted in the heat of passion. (ECF No. 8-4, at 2.)[8] Therefore, any such argument on appeal would have been unsuccessful and thus, was not clearly stronger than the arguments presented by appellate counsel on appeal. Accordingly, counsel was not ineffective for failing to raise this argument on appeal. This Court agrees that an argument that the Circuit Court abused its discretion by refusing to provide a heat of passion instruction was not "clearly stronger than those issues presented." *Bell*, 236 F.3d at 164 (quoting *Smith*, 528 U.S. 259 at 288). Thus, the Court concludes that "the presumption of effective assistance of counsel" was not overcome, and Mr. Fuller was not prejudiced.[9] *Id.*

Even if this Court were to conclude that this claim was non-frivolous, "the question is not whether [appellate] counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Jones*, 463 U.S. at 751 (explaining that defendants have no

---

[8] The Court recognizes that the Circuit Court's initial legal reasoning for denying the heat of passion instruction might have been off base, specifically, that a heat of passion defense does not apply outside of the context of murder and manslaughter. But, in the case at bar, the Court looks to whether *appellate counsel's* conduct amounts to ineffective assistance of counsel. The State Habeas Court that first evaluated appellate counsel's conduct did not find ineffective assistance of counsel because it determined that no heat of passion instruction was warranted based on the evidence.

[9] The resolution of Mr. Fuller's claim of ineffective assistance of counsel is highly dependent upon Virginia law. Thus, the State Habeas Court's conclusion that appellate counsel was neither deficient nor was Mr. Fuller prejudiced based on its interpretation of state law requires significant deference. *Richardson v. Branker*, 668 F.3d 128, 141 (citation omitted) (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law. Indeed, we have held that '[i]t is beyond the mandate of federal habeas courts to correct the interpretation by state courts of a state's own laws.'"); *see Leslie v. Dir., Va. Dept. of Corr.*, No. 3:12CV726, 2013 WL 4039026, at *6-7 (E.D. Va. July 31, 2013) (finding petitioner could demonstrate no prejudice because claims attacking counsel's failure to raise certain jury instructions was "highly dependent upon Virginia law").

"constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"). "Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim." *United States v. Mason*, 774 F.3d 824, 830 (4th Cir. 2014) (citation omitted). On appeal, counsel argued that Mr. Fuller acted without malice and in self-defense and should only have been found guilty of unlawfully shooting into an occupied vehicle. These were reasonable issues to raise on appeal based on the evidence at trial that Fuller acted because he was scared and did not know how to get Ms. Seaver to stop the car. While the appellate court rejected these claims because the evidence was sufficient to show that Mr. Fuller acted with malice, it was well within counsel's sound discretion to raise these two arguments instead of the argument that the trial court erred by refusing the heat of passion instruction. As discussed previously, that argument was not clearly stronger. Appellate counsel was neither deficient nor was Mr. Fuller prejudiced.

In sum, the Court discerns no unreasonable application of the law or an unreasonable determination of the facts in the state court's rejection of Claim One here. *See* 28 U.S.C. § 2254(d)(1)–(2). Accordingly, Claim One lacks merit and will be DISMISSED.[10]

---

[10] The Court received from documents from Nancy Halstead, Mr. Fuller's partner, and Ms. Seaver's sister. (ECF No. 9.) Ms. Halstead alleges a conspiracy against Mr. Fuller by law enforcement including "bringing false charges against Mr. Fuller by the multitudes to stop him as a whistleblower." (ECF No. 9, at 1.) The Court has reviewed these documents and finds that they are not relevant to the Court's conclusion that Claim One lacks merit, and that the § 2254 Petition must be dismissed.

19

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss (ECF No. 6) will be GRANTED. Mr. Fuller's claim will be DISMISSED, and the § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

Date: 2/16/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge